**Faith GOODMAN, Plaintiff–Appellant,**

v.

**Homer D. WAMPLER, et al.,
Defendants–Respondents.**

**No. SD 31611.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 15, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied

Aug. 6, 2013.

Application for Transfer Denied

Oct. 1, 2013.

Danieal H. Miller, Columbia, MO, for appellant.

Thomas D. Carver, Springfield, MO, for respondents.

JEFFREY W. BATES, J.

Faith Goodman (Goodman) appeals from a judgment which dismissed with prejudice the legal malpractice action she filed against her criminal defense attorney, Homer D. Wampler, and his employer, the Law Offices of Dee Wampler and Joe Pas-

sanise (hereinafter referred to individually as Attorney and Law Firm, and collectively as Defendants). We affirm because: (1) Goodman's petition did not allege that she was actually innocent of the charges against her, which is an essential element of her legal malpractice claim; and (2) her claim is barred by collateral estoppel because her convictions for assault and kidnapping have not been set aside through any of the multiple avenues available to a criminal defendant.

## I. Factual and Procedural Background

In January 2011, Goodman filed a civil action against Defendants. We summarize below the allegations from the petition that are relevant to this appeal:

1. Goodman had been charged with assault in the first degree and kidnapping in the Circuit Court of Stone County, Missouri.

2. On April 20, 2005, Goodman entered a plea of guilty to both charges.

3. On July 7, 2005, Goodman was sentenced to serve concurrent 10–year terms of imprisonment in the Missouri Department of Corrections on these two charges.

4. Goodman was sentenced to the shock incarceration program pursuant to § 559.115.[1]

5. According to a report prepared by the Missouri Board of Probation and Parole, Goodman successfully completed that program.

6. The trial court denied probation without holding the hearing required by § 559.115.

7. Attorney failed to request that the trial court schedule such a hearing and

advised Goodman that nothing could be done about the denial of probation.

8. Goodman remained incarcerated until December 22, 2010, when she was released on probation pursuant to a circuit court order granting her petition for writ of *habeas corpus.*

Defendants filed a joint motion to dismiss. The motion asserted that the petition should be dismissed because: (1) it failed to state a claim; (2) it was barred by collateral estoppel; and (3) it was barred by the applicable statute of limitations set out in § 516.120. The trial court granted the joint motion and entered judgment against Goodman. The trial court dismissed Goodman's petition with prejudice without specifying the ground(s) upon which that ruling was based. This appeal followed.

## II. Standard of Review

 If the trial court does not state the reason for its dismissal of the petition, we will affirm if dismissal was appropriate on any ground asserted by the movant. *Robinson v. Hooker,* 323 S.W.3d 418, 421 (Mo.App.2010). Defendants' first ground was that Goodman's petition failed to state a claim for relief because she failed to allege that she was actually innocent of the charges against her. With respect to this ground for dismissal, Defendants' motion was solely a test of the adequacy of the petition. *Fleddermann v. Camden County, Missouri Bd. of Adjustment,* 294 S.W.3d 121, 124 (Mo.App.2009). We review that ruling *de novo. Huch v. Charter Communications, Inc.,* 290 S.W.3d 721, 724 (Mo. banc 2009). We accept all of the plaintiff's averments as true and view those allegations in the light most favorable to the plaintiff. *Bosch v. St. Louis Healthcare Network,* 41 S.W.3d 462, 464

1. References to § 559.115 are to RSMo Cum. Supp. (2004). All further references to stat- utes are to RSMo (2000). All references to rules are to Missouri Court Rules (2012).

(Mo. banc 2001). We do not attempt to weigh the credibility or persuasiveness of any of the alleged facts. *Jennings v. SSM Health Care St. Louis,* 355 S.W.3d 526, 530 (Mo.App.2011). Instead, we review the petition to determine whether the facts alleged are sufficient to plead the elements of a cause of action that is recognized or might be adopted in that case. *Id.*

██ Defendants' second ground in the motion was that Goodman's claim was barred by the affirmative defense of collateral estoppel. *See* Rule 55.08; *Hemar Ins. Corp. of America v. Ryerson,* 108 S.W.3d 90, 92 (Mo.App.2003); *Ryan v. Ford,* 16 S.W.3d 644, 647 (Mo.App.2000). Defendants argued that Goodman could not prove she was actually innocent because her criminal convictions had not been set aside. To sustain a motion to dismiss based upon collateral estoppel, that defense must be irrefutably established by the pleadings. *Murray v. Fleischaker,* 949 S.W.2d 203, 205 (Mo.App.1997).[2]

### III. Discussion and Decision

Goodman presents three points on appeal, but we need address only the third as it is dispositive. In Point III, Goodman argues that her petition should not have been dismissed because: (1) her claim is not barred by collateral estoppel; and (2) the requirement that she plead and prove her actual innocence produces an absurd result. Based upon our review of the relevant case law, we find no merit in these arguments.

*State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498 (Mo.App.1985), was a writ proceeding, the origin of which was a prior criminal trial involving defendant Poole. He had been charged with assault with intent to kill. At trial, Poole was represented by attorney O'Blennis. Poole was found guilty and given a 20–year sentence. *Id.* at 499. Thereafter, Poole's conviction was set aside in his Rule 27.26 proceeding because O'Blennis provided ineffective assistance at the trial. *See Poole v. State,* 671 S.W.2d 787, 789 (Mo.App.1983). Poole then brought a legal malpractice action against O'Blennis. While that civil action was pending, Poole pled guilty to the original assault charge and received a seven-year sentence. After being given credit for time served, he was released from prison. *O'Blennis,* 691 S.W.2d at 499. In the civil action, O'Blennis moved for summary judgment based upon Poole's guilty plea. After the trial court denied the motion, a preliminary writ was issued. *Id.* at 500. The eastern district of this Court made the writ absolute because Poole's legal malpractice claim was barred by the doctrine of collateral estoppel. *Id.* at 501–04. The Court noted that Poole's "factual innocence was an indispensable element of his cause of action." *Id.* at 503. This requirement was grounded upon the strong public policy of not allowing a person to profit by his own fraud, take advantage of his own wrong or acquire property by his own crime. *Id.* at 504. The Court reasoned that allowing Poole's legal malpractice lawsuit to continue would shock the public conscience, engender disrespect for the courts and generally discredit the administration of justice. *Id.* Because Poole's guilty plea to the assault charge established that he was guilty of that offense, he was barred by the doctrine of collateral

---

**2.** It is evident from our review of Goodman's petition that she could not cure the defects identified by Defendants' first and second grounds for dismissal by simply repleading, and she did not attempt to do so. Therefore, the dismissal with prejudice was appropriate.

*See Bracey v. Monsanto Co., Inc.,* 823 S.W.2d 946, 946–47 (Mo. banc 1992); *Carey v. Pulitzer Pub. Co.,* 859 S.W.2d 851, 854 (Mo.App. 1993). Because the first two grounds of Defendants' motion had merit, we need not discuss the statute of limitations issue.

estoppel from attempting to prove otherwise in his civil malpractice action. *Id.* at 503–04.

In *Johnson v. Raban*, 702 S.W.2d 134 (Mo.App.1985), Johnson was convicted of robbery and given a 25–year sentence. His conviction was affirmed on appeal, and his Rule 27.26 post-conviction motion was denied. *Id.* at 135. Johnson then brought a legal malpractice action against his criminal defense attorney, Raban. He filed a motion to dismiss asserting collateral estoppel as a defense. The trial court granted the motion and dismissed the petition with prejudice. The eastern district of this Court affirmed the judgment. The Court held that "it is beyond doubt that the present action is interdicted by the doctrine of collateral estoppel." *Id.* at 136. The Court noted that "public policy dictates that a person convicted of a crime who has failed in his attack upon his conviction both directly and collaterally should not be permitted to recover against his attorney in a civil malpractice action for damages allegedly arising out of the attorney's handling of his defense." *Id.* at 138.

In *Johnson v. Schmidt*, 719 S.W.2d 825 (Mo.App.1986), Johnson was convicted by a jury of second-degree burglary. His conviction was affirmed on appeal. He then sued his criminal defense attorney, Schmidt, for legal malpractice. Schmidt moved to dismiss the petition for failure to state a claim because, *inter alia*, Johnson could prove no damages as the result of Schmidt's representation. The trial court granted the motion and dismissed the lawsuit. *Id.* at 825–26. The western district of this Court held that, in order for Johnson to proceed on his claim of legal malpractice, he first had to allege that the actions or omissions by Schmidt prevented Johnson's acquittal. Because Johnson's petition did not do so, it was properly dismissed. *Id.* at 826.

In *Ahern v. Turner*, 758 S.W.2d 108 (Mo.App.1988), Ahern pled guilty to two counts of involuntary manslaughter. He filed, and then dismissed without prejudice, a motion seeking post-conviction relief. He then sued his criminal defense attorney, Turner, for legal malpractice. In Turner's answer, he asserted collateral estoppel as a defense. That defense was reasserted in a motion for summary judgment. The trial court granted the motion and dismissed the action against Turner. *Id.* at 108–09. The eastern district of this Court, relying on *O'Blennis*, affirmed the dismissal of Ahern's lawsuit on the ground of collateral estoppel. *Id.* at 109–10.

In *Kuehne v. Hogan*, 321 S.W.3d 337 (Mo.App.2010), Kuehne was convicted of rape and sodomy. His convictions were affirmed on appeal, and his motion seeking postconviction relief was denied. He then sued his post-conviction counsel, Hogan, for legal malpractice. Hogan's motion to dismiss asserted that Kuehne's petition failed to state a claim. The trial court granted the motion and dismissed the case with prejudice. *Id.* at 339–40. The western district of this Court affirmed. Citing *O'Blennis*, the majority opinion held that actual innocence was an essential element of Kuehne's cause of action.[3] The inclusion of this element promotes Missouri's public policy of not permitting a convicted criminal to profit from his or her own wrongdoing. *Id.* at 341–42.

> Kuehne's innocence of the criminal charges for which he was convicted is essential to satisfy the causation element of his claim. . . . The fact of his guilt was previously determined when he was convicted of the criminal charges, and

---

**3.** One judge concurred in result and would have affirmed the dismissal on the ground of official immunity. *See Kuehne*, 321 S.W.3d at 343.

Kuehne is therefore barred from asserting a collateral civil claim where actual innocence is an essential element.

*Id.* at 342. Therefore, the trial court did not err by dismissing the case with prejudice. *Id.* at 343.

*Costa v. Allen,* 323 S.W.3d 383 (Mo.App. 2010), involved essentially the same facts and issue. Costa was convicted of statutory rape. His conviction was affirmed on appeal, and his post-conviction motion was denied. He sued his post-conviction counsel, Allen, for legal malpractice. Allen's motion to dismiss asserted that Costa's petition failed to state a claim. The trial court granted the motion and dismissed the case with prejudice. *Id.* at 383–85. The western district of this Court affirmed, relying upon "the public policy doctrine that the law does not allow a collateral attack on a valid criminal conviction." *Id.* at 385. Although the petition implied that Costa was actually innocent of statutory rape, Costa's petition failed to state a claim. *Id.* at 385–86. Citing *O'Blennis,* the majority opinion reasoned that Costa was collaterally estopped from attempting to prove that allegation:

> As long as a conviction is not set aside by an appeal or a post-conviction procedure, it remains a final judgment, and it stands as presumptive proof to the entire world for all purposes that the person convicted was in fact actually guilty. While the defendant may deny guilt, the denial is entirely without legal import as long as the judgment of conviction stands. The judgment conclusively binds the defendant and precludes his assertion of a collateral claim as to which his actual innocence is an essential element.

*Id.* at 385.[4] Thus, "[i]t is settled that a claim for relief from a valid conviction cannot be asserted in a claim of legal malpractice." *Id.* at 386. The majority opinion reasoned that, in the absence of actual innocence, a defendant's own illegal actions would be the full legal and proximate cause of his or her damages. *Id.* at 387. Allowing the recovery of damages under such circumstances would shock the public conscience. *Id.* Based upon these public policy principles, the Court held that the trial court did not err in dismissing Costa's petition with prejudice. *Id.* at 387–88.

In *Rosenberg v. Shostak,* 405 S.W.3d 8 (Mo.App.E.D.2013), Rosenberg pled guilty to two misdemeanor federal stolen property charges. His subsequent writ of error *coram nobis,* alleging ineffective assistance of trial counsel Shostak, was denied. Rosenberg then sued Shostak and his law firm for legal malpractice. The defendants filed a motion for summary judgment asserting, *inter alia,* that Rosenberg's claim was barred by collateral estoppel. The trial court granted summary judgment. *Id.* at 10–11. The eastern district of this Court affirmed. The Court reasoned that "a legal malpractice defendant may successfully invoke collateral estoppel if the plaintiff was convicted of an offense and failed to obtain exoneration by appellate or post-conviction relief, because the adjudication of the plaintiff's guilt precludes him from proving proximate cause." *Id.* at 13. Citing *Costa,* the eastern district of this Court agreed that, in the absence of actual innocence, Rosenberg's own illegal actions were the full legal and proximate cause of his damages. *Id.* Accordingly, the defendants were entitled to judgment

---

4. One judge concurred in result and would have affirmed the dismissal on the ground that other pleading deficiencies caused Costa's petition to not state a cause of action. *See Costa,* 323 S.W.3d at 388.

as a matter of law because "a plaintiff's innocence is an indispensable element of his or her malpractice cause of action." *Id.* This rule promotes the sound public policy consideration of not permitting a malpractice claimant to take advantage of his or her own wrong, found a claim on his or her iniquity or acquire property by his or her own crime. *Id.* at 15. Allowing such a suit for damages to proceed would engender disrespect for the courts, discredit the administration of justice and shock the public conscience. *Id.*

 As this review of Missouri law demonstrates, the trial court properly dismissed Goodman's petition with prejudice. Absent an allegation of actual innocence, her petition failed to state a claim for legal malpractice. *See, e.g., Kuehne,* 321 S.W.3d at 342. Additionally, her claim is barred by collateral estoppel because the petition shows on its face that her convictions for first-degree assault and kidnapping have not been set aside. *See, e.g., Raban,* 702 S.W.2d at 138. As a matter of law, she cannot prove that Defendants' alleged negligence was the proximate cause of the damages Goodman claims she sustained from being incarcerated. *See, e.g., Costa,* 323 S.W.3d at 387. Allowing Goodman's claim for damages to proceed would permit her to profit from her own criminal activity and violate Missouri public policy by engendering disrespect for the courts, discrediting the administration of justice and shocking the public conscience. *See, e.g., O'Blennis,* 691 S.W.2d at 503–04.

In spite of this long line of consistent authority, Goodman argues that: (1) actual innocence is not an essential element of her legal malpractice claim; and (2) her criminal convictions do not collaterally estop her from bringing this legal malpractice claim. Goodman cites *Jepson v. Stubbs,* 555 S.W.2d 307 (Mo. banc 1977), to support her arguments. Having carefully reviewed *Jepson,* we disagree.

Jepson was charged with the federal crime of refusing to report for induction into the military. He was represented by attorney Stubbs, who told Jepson he had no defense to the charge. Jepson pled guilty and was sentenced to serve three years in prison. He was incarcerated in September 1967 and released on parole on March 4, 1969. In March 1973, Jepson consulted with another attorney and learned there was a defect in his induction order, which provided a complete defense to the charge against him. His federal petition for writ of *coram nobis* was granted, his conviction was set aside and the charge was dismissed. In August 1975, Jepson sued Stubbs for legal malpractice. Stubbs asserted a statute of limitations defense based upon § 516.120, and the trial court granted summary judgment on that ground. *Id.* at 308–10. Our Supreme Court affirmed the dismissal because: (1) Jepson's claim for legal malpractice accrued on March 4, 1969, and (2) his lawsuit was filed more than five years after that date. *Id.* at 312–14.

As this review of *Jepson* illustrates, Goodman's first argument fails. Jepson was actually innocent of the charge against him, and his conviction was set aside before he filed his civil suit. Thus, *Jepson* in no way supports Goodman's argument that actual innocence is not an essential element of a legal malpractice claim in Missouri. *Jepson* also did not address the issue of whether a guilty plea would prevent a plaintiff from proving proximate cause. *See, e.g., Rosenberg,* 405 S.W.3d at 17.

 Goodman's second argument fares no better. It is based upon a statement in *Jepson* that "the existence of the judgment of conviction and the findings therein would not collaterally estop plaintiff [Jep-

son] from bringing an action against defendant [Stubbs]." *Id.* at 314. This statement is dicta because it was unnecessary to the decision. The dispositive issue in *Jepson* was when the legal malpractice claim accrued. Our Supreme Court decided that it accrued on March 4, 1969. *Id.* at 312. Having resolved the issue, it was unnecessary for the Court to address Jepson's argument that his claim did not accrue until April 15, 1975. It was in this part of the opinion that the Court made the statement upon which Goodman relies. We are not bound by dicta from our Supreme Court. *T.Q.L. ex rel. M.M.A. v. L.L.*, 291 S.W.3d 258, 265 (Mo.App.2009). Dicta can be persuasive when it is supported by logic. *Swisher v. Swisher*, 124 S.W.3d 477, 482 (Mo.App.2003). In *Jepson*, the dicta statement was supported through the use of a hypothetical involving a civil action. The Court's point—that a lawyer could be sued for negligence without the client having to first get the civil judgment set aside—seems correct. That hypothetical, however, has no application to a criminal conviction. "Since a criminal defendant thus has a good remedy for his lawyer's malpractice—namely to get his conviction voided—he has less need for a damages remedy than the loser of a civil lawsuit, who would have no chance of getting the judgment in the suit set aside just because his lawyer had booted a good claim or defense." *Winniczek v. Nagelberg*, 394 F.3d 505, 508 (7th Cir.2005).

The multiple opportunities available to a criminal defendant to have his or her conviction set aside by direct appeal, postconviction remedies, writ relief or *habeas corpus* convince us that the Supreme Court's dicta in *Jepson* is illogical and unpersuasive.

Finally, Goodman argues that the actual innocence rule and collateral estoppel bar should not apply here because she is only seeking damages for Defendants' failure to get her released on probation. She claims that the application of those rules to her lead to an absurd result. We disagree. The remedies noted above are sufficient to provide a guilty criminal defendant with an adequate means to obtain relief. Goodman's petition establishes on its face that she was granted habeas relief and placed on probation. She also could have sought relief by way of extraordinary writ. *See State ex rel. Norwood v. Sheffield*, 380 S.W.3d 666, 668 (Mo.App.2012) (relator was granted a writ of mandamus compelling the circuit court to release him on probation). Giving a guilty defendant an additional money damages remedy is unnecessary and contrary to Missouri public policy. Other states applying the actual innocence rule have done so in cases involving a guilty defendant who claimed the attorney's negligence resulted in a denial of probation or an excessive sentence.[5] Point III is denied. Points I and II are moot and need not be addressed.

---

5. *See, e.g., Howarth v. State Public Defender Agency*, 925 P.2d 1330, 1332–33 (Alaska 1996) (holding that the legal cause of the plaintiff's sentence was his own intentional criminal conduct, despite the fact that his defense attorney's conduct as to sentencing was negligent); *Lynch v. Warwick*, 95 Cal.App.4th 267, 115 Cal.Rptr.2d 391, 397 (2002) (holding that "the actual innocence requirement for a criminal legal malpractice case applies regardless of whether the former criminal defendant is seeking damages for a wrongful conviction, a longer sentence, or for attorney fees"); *Paul-*sen v. Cochran*, 356 Ill.App.3d 354, 292 Ill. Dec. 385, 826 N.E.2d 526, 533 (2005) (rejecting guilty defendant's claim that he should be permitted to sue his attorney for alleged negligence that resulted in a denial of probation); *Belford v. McHale Cook & Welch*, 648 N.E.2d 1241, 1245 (Ind.App.1995) (rejecting a guilty defendant's claim that he should be permitted to sue his attorney for legal malpractice when the defendant's sentence was within the range of possible sentences and the record showed he was aware of the range of punishment).

The judgment of the trial court is affirmed.

GARY W. LYNCH, J., concurs.

DANIEL E. SCOTT, P.J., concurs in principal opinion and separate concurring opinion.

DANIEL E. SCOTT, P.J., concurring.

The exoneration rule bars Goodman's claim, not factually, but based on public policy. Goodman cannot prevail in the absence of actual innocence because her " 'own illegal actions would be the full legal and proximate cause of [her] damages.' " *Rosenberg v. Shostak,* 405 S.W.3d 8, 14 (Mo.App.E.D.2013) (quoting *Costa v. Allen,* 323 S.W.3d 383, 387 (Mo.App.2010)). *See also Wiley v. County of San Diego,* 19 Cal.4th 532, 79 Cal.Rptr.2d 672, 966 P.2d 983, 988 (1998) (in criminal malpractice context, defendant's own criminal act is "the ultimate source of his predicament irrespective of counsel's subsequent negligence"), *quoted in Rosenberg,* 405 S.W.3d at 14. Goodman's intentional criminal conduct—kidnapping and first-degree assault—is the legal cause of her entire period of imprisonment. *See Howarth v. State, Pub. Defender Agency,* 925 P.2d 1330, 1337 (Alaska 1996).

In contrast, Goodman's theory is a slippery slope toward nuisance claims galore, *e.g.,* indigent defendants pleading guilty, then suing public defenders for not getting better plea deals, and demanding money damages for at least comparative fault. Goodman's reliance on *Jepson v. Stubbs,* 555 S.W.2d 307 (Mo. banc 1977), is misplaced. *See Rosenberg,* 405 S.W.3d at 17.

I concur.